# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

SHERYL LYNN CULBERT,

        Petitioner,

v.                                                  Case No. 07-CV-046
                                                        Criminal Case No. 03-CR-278

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

This matter comes before the court on Sheryl Culbert's petition, filed pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the 78 month sentence she is currently serving. In a Rule 4 order, this court ordered that the government respond to Culbert's petition and further directed that Culbert's trial attorney file an affidavit with the court specifically addressing Culbert's claims. Culbert's trial attorney, Matt Ricci, has filed an affidavit with the court and the government has filed a brief in opposition to Culbert's petition. The court has reviewed all of these filings and is now prepared to address the merits of the petition. For the reasons set forth below, Culbert's § 2255 petition will be denied.

## BACKGROUND

On January 6, 2004, a grand jury sitting in this district returned an indictment charging Culbert with one count of conspiracy to steal, transport, and fraudulently pass United States Treasury checks in violation of 18 U.S.C. § 371 (count one); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h)

(count two); and four counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(I) and 1956(a)(1)(B)(I) (counts nine through twelve).[1] On August 25, 2004, the grand jury returned a second superseding indictment charging Culbert with one count of conspiracy to steal, transport, and fraudulently pass United States Treasury checks in violation of 18 U.S.C. § 371 (count one); and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count two).

On October 14, 2005, Culbert pled guilty to counts one and two of the second superseding indictment. On January 17, 2006, this court sentenced Culbert to 78 months in prison, three years of supervised release, and ordered that she pay a $200.00 special assessment. The court also ordered Culbert to pay restitution in the amount of $206,016.32. This restitution was payable jointly and severally with Culbert's co-defendants. At the close of Culbert's sentencing hearing, the court advised her of her right to appeal, but Culbert did not file an appeal.

On January 16, 2007, Culbert filed a § 2255 petition. This court ordered Culbert to amend her petition pursuant to *United States v. Evans*, 224 F.3d 670 (7th Cir. 2000), and on May 7, 2007, Culbert filed an amended petition claiming several separate grounds for relief. Specifically, Culbert argues: (1) that she suffered ineffective assistance of counsel; (2) that the court wrongfully applied U.S.S.G.

---

[1] On March 23, 2004, the grand jury returned a superseding indictment that added defendants Marlon Holt, Rhonda Peoples, Larry Bluford, and Johnny Watts to the case. The superseding indictment charged Culbert with the same offense as the original indictment filed against her.

-2-

§ 3B1.1; (3) that she was wrongfully convicted of 18 U.S.C. § 1956(h); (4) that her attorney failed to raise sentencing concerns under *United States v. Booker;* and (5) that the court wrongfully calculated her restitution amounts.

## ANALYSIS

A motion under § 2255 allows a federal prisoner to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . ., or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. The relief is available only in limited circumstances, such as where an error is jurisdictional or of Constitutional magnitude. *See Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995). Section 2255 petitioners may not raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that were not raised on appeal; and (3) Constitutional issues that were not raised on direct appeal. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)); *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Theodorou v. United States*, 887 F.2d 1336, 1338 (7th Cir.1989). The exceptions to this procedural default rule arise only when a petitioner demonstrates cause and prejudice for failing to raise the issue; or when the court's refusal to consider a Constitutional issue would result in a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

## A. Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims may be raised in a § 2255 petition even if a defendant did not raise these claims on appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). However, a petitioner bears a substantial burden of demonstrating: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that he was prejudiced because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 695 (1984). The court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Culbert argues that her attorney was deficient at nearly every stage of the representation. She first states that prior to signing the plea agreement, her attorney only provided a few pages of the agreement to her for her signature. She avers that she only received the first page, signature page, and a few pages in the middle of the plea agreement. She further states that she only spoke briefly with her attorney and described the conversations they had as "vague." Culbert argues that prior to signing the document, she never knew there were more pages to the plea agreement.

The court has carefully reviewed the record below and the affidavits and responses submitted in connection with Culbert's § 2255 petition and it finds that her

-4-

arguments are quite simply unsupported by the record. To begin, the plea agreement itself belies her statements. At page 19, at the "ACKNOWLEDGMENTS" section directly above Culbert's signature, it states: ". . . My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and am satisfied that my attorney has provided effective assistance of counsel." (Culbert Plea Agreement 19.) Moreover, every page of the agreement is numbered and it's highly unlikely that this could be overlooked even if Culbert did only receive certain pages of the agreement. The Rule 11 colloquy the court conducted on October 14, 2005, similarly undermines Culbert's statements. The court thoroughly discussed the terms of the agreement with Culbert and asked several questions directly relating to her understanding of this agreement.

> THE COURT: Now, you heard me describe earlier, Ms. Culbert, the fact that a written plea agreement had been filed concerning your case and the disposition of the charges, and I want you to turn to the plea agreement, specifically page 19, which is the signature page. And my question of you is whether the signature above the typed name Sheryl Lynn Culbert is in fact your signature.
> CULBERT: Yes.
> THE COURT: Prior to signing this document did you read it to yourself?
> CULBERT: Yes.
> THE COURT: Did you discuss it with Mr. Ricci?
> CULBERT: Yes.
> THE COURT: Do you believe you understand all of its relevant terms and provisions?
> CULBERT: Yes.

-5-

(Change of Plea Hearing Tr. 8-9.) More to the point, the court asked specific questions relating to several pages in the plea agreement, and Culbert responded that she had read each of the pages the court referenced.

> THE COURT: All right. Next I want to address with you the factual basis for your proposed plea of guilty. And in that regard I want to return to the information that has been provided to the court in paragraph 5 on pages 2, 3, 4, 5 of the plea agreement. And my question of you is, first of all, *I assume before you signed the plea agreement you read through all of this material; is that correct*?
> CULBERT: *Yes*.
> THE COURT: And that is the factual basis for your proposed plea of guilty. And my specific question of you is whether there is anything in paragraph 5, or the subparagraphs contained therein, that you disagree with or would otherwise care to comment on this morning.
> CULBERT: No.

(*Id.* 18) (emphasis added.)

Furthermore, her attorney's sworn affidavit undercuts her claim that she did not see the entire plea agreement prior to signing it. In response to her petition, Attorney Ricci, Culbert's trial counsel, avers, "I sent the whole plea agreement to Ms. Culbert. The idea I sent only a few pages is absurd, as such conduct would result in nothing but problems and what would be the point." (Attorney Ricci Aff'd ¶ 6.) Attorney Ricci also indicates that around the time Culbert signed the plea agreement, he engaged in research relating to the agreement and had several telephone conversations with her. (*See* Attorney Ricci Aff'd ¶¶ 4; 6-9.)

-6-
Case 2:07-cv-00046-JPS   Filed 05/13/08   Page 6 of 15   Document 10

The record clearly contradicts Culbert's arguments. If her statements were supported by the affidavits, responses, and underlying record, she would undoubtedly establish that Attorney Ricci's performance fell below an objective standard of reasonableness, as failing to thoroughly discuss the terms of a plea agreement would certainly be unreasonable. However, Culbert can make no such claim. Courts must take Rule 11 hearings seriously and bind defendants to their sworn statements made in open court. *See Hugi v. United States,* 164 F.3d 378, 381 (7th Cir. 1999). The Seventh Circuit has held that "great weight" will be placed on in-court statements made during a Rule 11 Colloquy, and these statements are credited over a defendant's later claims. *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir.1999).

Against this backdrop, the court finds that the signing of the plea agreement, Culbert's statements during the Rule 11 hearing, and the information provided in Attorney Ricci's affidavit suggest that the Attorney Ricci was nothing short of thorough in his plea discussions with Culbert. Indeed, at the Rule 11 hearing, Culbert herself stated that she read the entire agreement and understood all of the relevant provisions. It is impossible to give credence to her new assertions that her plea was not made knowingly and voluntarily, with full understanding of the consequences. Culbert is unable to demonstrate ineffective assistance of counsel on this issue.

Culbert also argues that her attorney failed to adequately investigate claims and defenses of her case. However, Culbert does not set forth what type of exculpatory evidence a pretrial investigation would have produced, or how her

-7-

defense would have been furthered by such evidence. In order to succeed on a claim for a failure to investigate, she must present "a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *see also Carpenter v. United States*, 492 F. Supp. 2d 912, 919-20 (N.D.Ill. 2007). Culbert has not met this burden, and her failure to investigate claim must fail.

Culbert also raises an ineffective assistance of counsel claim based upon her attorney's failure to file an appeal in her case, but the court finds this claim to be without merit. A petitioner satisfies both prongs of the *Strickland* standard if she can demonstrate that she timely requested that a notice of appeal be filed, but her attorney failed to do so. *See United States v. Nagib*, 56 F.3d 798, 801 (7th Cir. 1995). This is generally demonstrated by particularized facts and sworn affidavits that an appeal was requested within the applicable time frame for filing an appeal. *See id.* Culbert has not done this; she simply makes a general and unsupported claim that she wanted to appeal her sentence and conviction. Moreover, her statements are contrary to the underlying record and affidavit filed by her trial attorney.

At the close of Culbert's sentencing hearing, this court advised her of her right to appeal, and further informed her:

> [i]f you are unable to pay the cost of the appeal you have the right to seek leave to appeal in forma pauperis. Should you elect to appeal Mr. Ricci is required to file a notice of appeal on your behalf within ten days of the docketing of the judgment and commitment order in your case. Otherwise you will have effectively waived any right of appeal.

-8-

(January 17, 1006 Sentencing Tr. 29.)  The court also informed her attorney of his obligations with respect to filing any appeals:

> Mr. Ricci, as you are aware pursuant to the teachings of the U.S. Supreme Court in Roe versus Flores-Ortega decided in February 2000 you have an obligation to confer with Miss Culbert as to the merit of any appeal and be guided by any request that she may make of you with respect to pursuing an appeal on any issue.

(*Id.* 29-30.)  Culbert was well aware of her right to file an appeal, including her time limits, *in forma pauperis* rights, and that electing not to file a timely appeal resulted in a waiver of any of these rights.

Her attorney also avers that he discussed the matter of an appeal with her several times following her sentencing. (Attorney Ricci Aff'd ¶ 15-17.)  He further averred that he discussed the merits of an appeal with Culbert, and even suggested that if the court adopted the presentence report as written (recommending that Culbert be denied acceptance of responsibility credit), there would grounds for an appeal.  Most importantly, Culbert's attorney averred that each time an appeal was discussed, Culbert did not express any desire to appeal.  Finally, the court finds it pertinent to note that Culbert's attorney filed several motions to extend her self-report date following Culbert's sentencing.  This is relevant because it's clear that after she was sentenced, her attorney continued to represent her interests, and it further belies her statements that he failed to follow her instructions to file an appeal.  Accordingly, the court finds that she is not entitled to relief on this ground.

**B.     Improper Calculation of United States Sentencing Guidelines**

At ground two, Culbert argues that the presentence report incorrectly included a four-level role enhancement under U.S.S.G. § 3B1.1(a), and that her attorney was ineffective for failing to object to this enhancement. Once again, Culbert's claim will be analyzed under the familiar *Strickland* standard.

Under § 3B1.1, a defendant's offense level is increased if she played an aggravating role in the charged offense. Section 3B1.1(a), which provides for the four-level enhancement Culbert received, states, "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." In assessing the defendant's role under this section, the court must consider all "relevant conduct," not just the elements of the offense charged. U.S.S.G. § 3B1.1(a), intro. cmt. Relevant factors for the court to consider include

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* n. 4.

When the court considers Culbert's role in the conspiracy under the parameters set forth in § 3B1.1, it is clear that she was properly assessed the four-level enhancement. The entire conspiracy charged ten individuals, and the group of conspirators Culbert was personally involved in conspiring with included at least

five others. In the plea agreement, Culbert acknowledged that she was personally in charge of obtaining stolen government checks and would receive them from others involved in the conspiracy. Culbert caused these checks to be endorsed and transmitted to others in the conspiracy, and she acknowledged that she caused at *least* $200,000 in stolen monies to be transmitted during her involvement in the conspiracy. The facts suggest that Culbert also encouraged Alvyna Sanders, one of her co-defendants, to join the conspiracy and she had substantial direction and control over Sanders' actions once she became involved in the criminal enterprise, including directing her to open a checking account for the purpose of depositing the fraudulent checks, transferring funds from this account, and directing her to fraudulently endorse the stolen checks.

Culbert's actions and involvement in the conspiracy fit squarely within the factors to be considered in assessing an enhancement for being a leader or organizer. As such, her trial attorney's failure to object to § 3B1.1(a) enhancement was not ineffective. Under *Strickland*, a petitioner must first demonstrate the counsel's actions fall below an objective basis of reasonableness; it is not unreasonable to refrain from filing an objection to a presentence report when there is a sound legal and factual basis for an enhancement's application to a defendant. *See Jennings v. United States.* 461 F. Supp. 2d 818, 829-30 (S.D.Ill. 2006) (collecting cases where counsel was not ineffective in failing to file challenges to presentence reports where such challenge were not merited by law). Equally important, Culbert would be unable to show that she was prejudiced by her

-11-
Case 2:07-cv-00046-JPS   Filed 05/13/08   Page 11 of 15   Document 10

five others. In the plea agreement, Culbert acknowledged that she was personally in charge of obtaining stolen government checks and would receive them from others involved in the conspiracy. Culbert caused these checks to be endorsed and transmitted to others in the conspiracy, and she acknowledged that she caused at *least* $200,000 in stolen monies to be transmitted during her involvement in the conspiracy. The facts suggest that Culbert also encouraged Alvyna Sanders, one of her co-defendants, to join the conspiracy and she had substantial direction and control over Sanders' actions once she became involved in the criminal enterprise, including directing her to open a checking account for the purpose of depositing the fraudulent checks, transferring funds from this account, and directing her to fraudulently endorse the stolen checks.

Culbert's actions and involvement in the conspiracy fit squarely within the factors to be considered in assessing an enhancement for being a leader or organizer. As such, her trial attorney's failure to object to § 3B1.1(a) enhancement was not ineffective. Under *Strickland*, a petitioner must first demonstrate the counsel's actions fall below an objective basis of reasonableness; it is not unreasonable to refrain from filing an objection to a presentence report when there is a sound legal and factual basis for an enhancement's application to a defendant. *See Jennings v. United States.* 461 F. Supp. 2d 818, 829-30 (S.D.Ill. 2006) (collecting cases where counsel was not ineffective in failing to file challenges to presentence reports where such challenge were not merited by law). Equally important, Culbert would be unable to show that she was prejudiced by her

attorney's failure to file an objection because even if an objection were filed, this would not have changed the result of her overall offense level calculation.[2]

Finally, the court finds that Culbert's *Booker* challenge, also raised under ineffective assistance of counsel, is similarly without merit. Culbert argues that the § 3B1.1 enhancement was unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005), and her attorney was ineffective for failing to object to its application and violation of *Booker*. As noted in the government's response, Culbert's *Booker* claim misconstrues the Court's holding and is without merit.

In *Booker*, the Court determined that the sentencing guidelines are only advisory, and that defendants have a right to a jury trial on any disputed factual subject that increases the maximum punishment. *See Booker*, 543 U.S. at 238. Culbert's sentence was not contrary to *Booker* because the court acknowledged at her sentencing hearing that the sentencing guidelines were now advisory and imposed a sentencing consistent with the factors set forth in 18 U.S.C. § 3553(a)(2) (January 17, 2006 Sentencing Tr. 11; 22-23.) Furthermore, as will be discussed below, Culbert stipulated to the factual basis of the charged conduct, in addition to waiving her right to factual findings made by a jury. Culbert has no meritable *Booker* claim, and her attorney was not ineffective for failing to raise a futile objection.

---

[2]This is even more clear if the court takes into consideration the government's submission that the role in the offense enhancement was a bargained-for calculation; if Culbert accepted the four levels, the government in turn agreed to recommend that Culbert receive full credit for acceptance of responsibility. The facts demonstrated that Culbert misrepresented her and her brother's culpability to law enforcement agents, and the probation office recommended that she not be given acceptance of responsibility credit. Under these facts, Culbert could have been *more* prejudiced had her attorney objected to the role in the offense enhancement.

**C.    Wrongful Conviction of 18 U.S.C. § 1956(h)**

Culbert next argues that she was wrongfully convicted of 18 U.S.C. § 1956. Culbert meets two substantial challenges to this ground: (1) her waiver of rights in signing her plea agreement; and (2) a procedural default for failing to raise this issue on direct appeal. As noted above, the failure to bring an issue on direct appeal bars a petitioner from later raising it in a § 2255 petition. *Massaro,* 538 U.S. at 504; *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). The narrow exception to this bar is when a defendant can demonstrate cause for the default and actual prejudice resulting from the default, or that if a fundamental miscarriage of justice would result otherwise. *Massaro*, 538 at 504; *Galbraith*, 313 F.3d at 1006. Culbert's petition does not satisfy the exception to the procedural default, and, even if the court were to consider her claim further, she waived several rights to challenge her conviction when she plead guilty.

In signing the plea agreement and formally pleading guilty at her Rule 11 hearing, Culbert waived a number of rights that she would otherwise have in challenging her conviction. When a defendant voluntarily pleads guilty, she waives all non-jurisdictional defenses, "even constitutional violations 'not logically inconsistent with the valid establishment of factual guilt .'" *United Stales v. Bell*, 70 F.3d 495, 496 (7th Cir. 1995) (quoting *Menna v. New York*, 423 U.S. 61, 63 n. 2 (1975)). As noted above, it is clear to the court that Culbert knowingly and voluntarily entered into her plea of guilty, and she is bound to her statements made to the court at her Rule 11 hearing. *See United States v. Standiford,* 148 F.3d 864,

-13-

867 (7th Cir. 1998); *see also United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000). This court carefully informed Culbert of the consequences of pleading guilty, and she acknowledged them under oath in open court. Notably, Culbert unequivocally responded that she understood the court when it informed her:

> Now, by pleading guilty to these two offenses, that is counts one and two, you are being called upon this morning to waive or give up a number of rights that you have as a defendant in a criminal case, beginning of course with that all important right, namely, the right to a presumption of innocence which remains with you throughout every stage of this case and would not be overcome until such time as if ever the finder of fact, whether it be the court sitting without a jury or a jury of 12, unanimously found from all of the evidence in the case that you were guilty of one or both of the offenses to which you are proposing to plead guilty to. However, by your guilty pleas you should understand that you are waiving or giving up your right to a presumption of innocence, because by those guilty pleas you are acknowledging to the court and indeed all present the relevant conduct that relates to those offenses.

(Change of Plea Hearing Tr. 14-15.) Culbert cannot now claim that she is innocent of the charges and the conduct to which she plead guilty. This right was knowingly waived, and her argument that she was wrongfully convicted of § 1956 is without merit.

### D. Improper Calculation of Restitution Amount

Culbert's final claim, a challenge to the restitution amount, is not appropriately brought in a § 2255 petition. A § 2255 action allows a federal prisoner "in custody. . . claiming a right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction ... or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The Seventh Circuit has held that challenges to fines or restitution calculations are inappropriately brought in § 2255 petitions because they do not relate to the defendant's custody. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir.1997) (affirming the denial of a petitioner's motion challenging ordered restitution via § 2255).

Accordingly,

**IT IS ORDERED** that Culbert's petition pursuant to 28 U.S.C. § 2255 be and the same is hereby **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of May, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge